# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

CATHERINE WONG                                                                                          PLAINTIFF

V.                                                                                      NO. 4:16-CV-109-DMB-JMV

LIGHTHOUSE POINT, LLC
d/b/a Trop Casino Greenville                                                                            DEFENDANT

## MEMORANDUM OPINION AND ORDER

This employment discrimination action is before the Court on Lighthouse Point's, LLC, motion for summary judgment, Doc. #30, and its motion for partial summary judgment, Doc. #32.

## I
## Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is proper only when the record demonstrates that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Luv N' Care Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016). "A factual issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and material if its resolution could affect the outcome of the action." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226 (5th Cir. 2015) (internal quotation marks omitted). On a motion for summary judgment, a court must "consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016).

In seeking summary judgment, "[t]he moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (internal quotation marks and

alterations omitted). If the moving party satisfies this burden, "the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). "Where the nonmoving party bears the burden of proof at trial, the moving party satisfies this initial burden by demonstrating an absence of evidence to support the nonmoving party's case." *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).

## II
## Factual Background

### A. Wong's Initial Employment with Lighthouse Casino

Catherine Wong is an Asian American woman who was born in October of 1954. Doc. #35-1 at 5, 22. She attended both Mississippi State University and Delta State University but did not earn a degree from either. Doc. #35-1 at 8.

In the early 1980s, after moving to Greenville, Mississippi, with her husband, Wong, her husband, and her husband's parents became owners of a Chinese restaurant in Greenville. *Id.* at 9–10. In addition to the restaurant, Wong ran Riverland Print Works, a t-shirt screen printing business; and Posh Designs, a catering company. *Id.* at 10–12. In 2007, Wong closed the restaurant and the t-shirt business. *Id.*

In January 2008, Wong began working as an assistant manager at Doe's Eat Place in Greenville. *Id.* at 12; Doc. #35-15 at 3. Approximately three months later, in April of 2008, Wong was hired by Lighthouse Casino to work as a guest relations manager. Doc. #35-1 at 12–13. As a guest relations manager, Wong, who still worked at Doe's,[1] served as a liaison between guests

---

[1] Wong worked at Doe's until December of 2012. Doc. #35-1 at 12.

and Tess Ingram, a white woman[2] and the casino's general manager at the time Wong was hired. *Id*. at 13–14.

At some point, Lighthouse Casino merged with Jubilee Casino and became Tropicana Casino, also referred to as "the Trop." *Id*. at 16, 20. Sometime after this merger, Wong was placed under the supervision of an unnamed male marketing director. *Id*. at 16–17. In September of 2011, Cheryl Goode, an African American woman,[3] became Tropicana's marketing director. *Id*. at 18. Goode "constantly tr[ied] to find something wrong with everything that [Wong] did." *Id*. at 19. Wong heard from "people" that Goode "did not like white people" and Wong could tell that Goode did not like her because even though she is Asian, she is "considered white." *Id*. at 24.

On a Monday in January 2012, Wong was called into the office of Roslyn Hinton, Tropicana's human resources director. *Id*. at 18, 20. Hinton and Goode, who was also present, informed Wong that she was being terminated, effective immediately, for failure to follow casino procedure in running a drawing the previous Friday. *Id*. at 20–21. Wong's employment ended that day. *Id*. At the time Wong was terminated, Chris Strobbe, a white man,[4] was Tropicana's general manager. *Id*. at 29.

Following her termination, Wong suffered from increased stress which she attributes to numerous factors. Doc. #35-1 at 85–86. Approximately three months after her termination, Wong suffered a heart attack caused by high cholesterol. *Id*. at 87.

### B. Wong's Rehire, and Subsequent Hire of Aleisha Baker

In November of 2012, Strobbe told a friend of Wong's to tell Wong to call him. Doc. #35-1 at 29. During their first conversation, Strobbe told Wong that he believed she would be "good

---

[2] Doc. #35-14 at 1.
[3] Doc. #35-1 at 22.
[4] Doc. #35-14 at 1.

3

for the position to be director" of The Greenville Inn and Suites, the hotel attached to Tropicana. *Id.* at 31; Doc. #31-2 at 26. Wong, who was then 58 years old, accepted Strobbe's offer to work as Director of Hotel VIP Services. *See* Doc. #35-1 at 38; Doc. #35-2. As director, Wong was responsible for the operations of the hotel, including (1) training, hiring, and firing hotel staff; (2) working with maintenance to fix problems on the property; (3) doing budgets and payroll; and (4) "drumming up business." Doc. #35-1 at 38, 43.

On September 16, 2013, Wong, together with Hinton, hired Aleisha Baker, an African American woman born in 1977, to work as a front desk clerk. Doc. #35-3 at 4–5; Doc. #35-1 at 51. Following Baker's hire, Wong oversaw Baker's training on the hotel's reservation system and "how to answer the phone correctly." Doc. #35-1 at 51.

### C. April 2015 Evaluation and Training of Baker

On April 9, 2015, Roscoe Green, an African American male[5] who was then working as Tropicana's general manager, completed a "Management Performance Evaluation" of Wong. Doc. #35-5. Wong received scores of "Exceeds Expectations" or "Meets Expectations" in every measured category. *Id.* Overall, Wong's scores placed her in the "Exceeds Expectations" category. *Id.*

Also around April 2015, Wong decided that she needed a supervisor for when the hotel was busy. Doc. #35-1 at 52, 56. She started to "groom" Baker to be her assistant. *Id.* Specifically, Wong showed Baker office procedures, purchasing, and how to train new employees. *Id.* at 52–53.

### D. Hotel Director Position

On September 8, 2015, Wong sent Hinton an e-mail stating that she had received approval

---

[5] Doc. #35-14 at 1.

4

from Green to create a hotel supervisor position to provide supervision when she was away from the hotel. Doc. #35-7. Two days later, on September 10, 2015, Tropicana issued a vacancy announcement for the position of Hotel Supervisor. Doc. #35-16. The duties of the Hotel Supervisor position were described as:

> Directly supervises all hotel Front Desk and Housekeeping staff and ensures proper completion of all duties. Directs and coordinates the activities of the front desk, reservations, guest services, and housekeeping areas. Prepare monthly reports and budget for the department.

*Id.* According to Green, vacancy announcements are posted on "some type of website" which is accessible to employees "as well as anyone applying from the outside." Doc. #35-4 at 17.

Wong told Baker that she should apply for the new position. Doc. #35-3 at 12. Baker submitted her application on September 11, 2015. *See* Doc. #35-8. Wong never applied for the Hotel Supervisor position. Doc. #31-2 at 16.

### E. Wong's Termination

At about the time Green approved the creation of the hotel supervision position, he began to contemplate eliminating Wong's position. Doc. #31-2 at 9–10. According to Green, he made this decision to produce "cost savings" and discussed it with Lighthouse's corporate office, with whom he had been discussing "reorganization/restructuring" since July or August. *Id.* at 10; Doc. #31-3 at 6.

At approximately 4:00 p.m. on September 23, 2015, Wong was informed that she needed to see Green. Doc. #31-2 at 9; Doc. #35-1 at 65. After Wong entered Green's office, Green informed her that her position was being terminated. Doc. #35-1 at 67. Green said that Wong was doing "an excellent job;" it was "just corporate terminating … the position." *Id.*

Karen Spencer, a white woman and then human resources secretary, was terminated the same day. Doc. #35-1 at 66; Doc. #35-4 at 10. During his deposition, Green testified that he could

not "remember exactly" why Spencer was terminated but he "believe[s]" that it was also for cost savings purposes. Doc. #35-4 at 11. Hinton testified that Spencer was let go as part of the same corporate reorganization which eliminated Wong's position. Doc. #35-6 at 5.

### F. Reassignment of Wong's Duties and Promotion of Baker

Immediately after Wong's termination, Green oversaw the day-to-day operations of the hotel. Doc. #35-3 at 19. However, on September 25, 2015, the Trop posted a vacancy announcement for a "Director of [Food and Beverage]/Hotel Operations." Doc. #35-9. The duties of the position included both the duties of the Director of Food and Beverage ("F&B") and the directorial duties of Wong's eliminated position. *See id.*; Doc. #35-12 at 3; Doc. #35-1 at 69–70. Regarding qualifications, the announcement provided:

> Bachelor's degree preferred. Five to ten years of progressive management experience in Food & Beverage & hotel operations or equivalent combination of education and experience. Experience in a major restaurant, hotel and/or casino preferred.
>
> Requires advances knowledge of the principles and practices within the food and beverage/hospitality industry.

Doc. #35-9.

Approximately three weeks after Wong was terminated, Green and Hinton interviewed Baker for the hotel supervisor position. Doc. #35-3 at 13. Sometime later, Baker was offered, and accepted, the position, resulting in Baker assuming some of Wong's old duties related to the front desk and receiving a salary increase of $120 per week. *Id.*; Doc. #35-3 at 14–15; Doc. #35-13 at 4. According to Green, he did not consider offering Wong the supervisor position because she did not apply for the job. Doc.#35-4 at 16.

Approximately two months after Wong's termination, Leon Lagoberto, a 62-year-old Hispanic male who was then the food and beverage director at the casino, became the Director of

F&B/Hotel Operations.  Doc. #35-4 at 20; Doc. #35-12 at 3.  This promotion carried no pay increase.  Doc. #31-2 at 16.

### G.  Departures of Lagoberto and Green

Lagoberto left the Director of F&B/Hotel Operations position in the spring of 2016.  Doc. #35-3 at 7.  After Lagoberto left, his food and beverage duties were handled by the food and beverage manager while his hotel operations duties were handled by Baker.  Doc. #35-4 at 23.  In May 2016, the Trop posted a vacancy for the F&B/Hotel Operations position.  Doc. #35-1 at 69–70. Wong applied for the position in May.  *Id*.  Hinton passed along Wong's application to Green but Green elected not to interview Wong.  Doc. #35-6 at 21.  Green did not remember seeing Wong's application but testified he did not hire anyone because there "[p]robably wasn't a field of candidates available."  Doc. #35-4 at 32.  According to Green, he was looking for a candidate with both food and beverage and hotel experience.  *Id*.

Green left his position in the summer of 2016.  Doc. #35-4 at 4.  After Green left, Bill Lander served as acting general manager.  Doc. #35-3 at 7.  Green was replaced at some point by Jason Phillips, a Caucasian male.  Doc. #35-6 at 20–21.  In January 2017, Phillips hired Lionel Grant, an African American male, as Food and Beverage and Hotel Director.  Doc. #35-3 at 5–6; Doc. #35-6 at 20.

### H.  Wong's Health Issues

After her second termination, Wong suffered from "stress and not being able to sleep." Doc. #35-1 at 90.  To deal with this stress, Wong continued to see Dr. Tom Edwards, a cardiologist who had been treating her during her second employment with Lighthouse.  *Id*. at 90–91.  Wong also continued taking Citrolopram, an antidepressant which was prescribed to her during her tenure as director.  *Id*. at 88–89.

7

### I. EEOC Proceedings and This Action

On October 20, 2015, Wong filed a Charge of Discrimination with the Equal Employment Opportunity Commission. Doc. #1-1. The charge alleged that Wong was wrongfully terminated on the bases of her race, national origin, and age. *Id*. The EEOC issued Wong a "Notice of Right to Sue" on March 8, 2016, and Wong filed this action on June 1, 2016. Doc. #1; Doc. #1-2.

Wong's complaint alleges claims of race and age discrimination arising from her September 23, 2015, termination. Doc. #1. On June 13, 2017, following a period of discovery, Lighthouse filed a motion for summary judgment. Doc. #30. The following day, Lighthouse filed a motion for partial summary judgment. Doc. #32. Wong filed separate responses to the two motions. Doc. #35; Doc. #37. Lighthouse filed a joint reply. Doc. #38.

### III
### Analysis

In its first motion for summary judgment, Lighthouse seeks summary judgment on all of Wong's claims. The memorandum accompanying the motion addresses the claims expressly pleaded in Wong's complaint – claims for wrongful termination based on age and race discrimination. In response, Wong abandons her age discrimination claim but argues that her wrongful termination claim based on race discrimination should survive and that her claims for failure to promote and failure to hire should also proceed to trial. Lighthouse replies that Wong's claims for failure to rehire and promote are not pleaded in her complaint and are, therefore, not properly before the Court.

#### A. Failure to Promote and Rehire Claims

It is axiomatic that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). When a response to a

motion for summary judgment asserts a new claim, a district court should construe the response as a motion to amend the complaint. *Ganther v. Ingle*, 75 F.3d 207, 211–12 (5th Cir. 1996).

This Court has previously observed:

> When considering whether a complaint has alleged a particular claim of discrimination, a Court must be cognizant of the fact that "[e]ven though heightened pleading is not required in discrimination cases, the complaint must still 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Williams v. Boeing Co.*, 517 F.3d 1120, 1130 (9th Cir. 2008) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). Thus, a discrimination claim will only be considered a part of a complaint if the allegations of the complaint provide "fair notice" of the claim. *Id.*

*Loomis v. Starkville Miss. Pub. Sch. Dist.*, 150 F.Supp.3d 730, 745–46 (N.D. Miss. 2015). Thus, to determine whether Wong may assert a failure to rehire or failure to promote claim, the Court must first consider whether Wong's complaint provides fair notice of such claims. If the complaint does not provide fair notice, the Court must construe Wong's response as a motion to amend and decide whether such motion should be granted.

Wong's complaint contains no reference to the director position, her application for the director position, or even a reference to a claim for a failure to hire or promote. Indeed, there is nothing in the complaint which would have provided Lighthouse any notice, much less fair notice, that Wong was asserting either claim. *See, e.g., Johnson v. City Univ. of N.Y.*, No. 00-civ-4964, 2002 WL 1750841, at *4 (S.D.N.Y. July 24, 2002) (complaint did not provide fair notice of failure to hire claim when it "fail[ed] to indicate for which available position [defendant] failed to hire [the plaintiff]"). Because the complaint does not provide fair notice of such claims, the Court must construe the response as a motion to amend.

Construing the response as a motion to amend, the Court concludes that amendment must be denied for multiple reasons. First, the motion is untimely, having been filed approximately seven months after the November 15, 2016, amendment deadline set in this case. *See* Doc. #11.

Second, in violation of this Court's local rules, the motion does not include a proposed amended pleading. *See* L.U. Civ. R. 7(b)(2). Finally, even if procedurally proper, the motion should be denied on substantive grounds. Wong learned that she was not selected for the Director of F&B/Hotel Operations position no later than March 16, 2017—when Baker testified at her deposition that Grant had been hired, Doc. #35-3 at 5—but waited more than three months, until after the discovery and dispositive motion deadlines had passed, to introduce her claims. This undue delay and the resulting prejudice to Lighthouse justifies denial of leave to amend. *See Smith v. EMC Corp.*, 393 F.3d 590, 598 (5th Cir. 2004) ("Because of the motion's undue delay and undue prejudice to [defendant], the district court did not abuse its discretion in denying … leave to amend."); *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992) (affirming denial of leave to amend where "the plaintiffs did not propose their amendment until well over a year after they had instituted their actions and several months after discovery on the actions had effectively terminated[] [and] by the time the plaintiffs proposed their amendment, [defendant] had already moved for summary judgment"). Because Wong did not plead a failure to hire or failure to promote claim, and because Wong is not entitled to amendment, such claims are not before the Court.

**B. Race Discrimination – Wrongful Termination**

Title VII prohibits discrimination "because of" a protected characteristic, including race. 42 U.S.C. § 2000e-2(a)(1). "A plaintiff may prove Title VII discrimination through direct evidence or circumstantial evidence." *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007). When, as here, a plaintiff lacks direct evidence of discrimination, she "may yet prevail … by providing circumstantial evidence sufficient to raise an inference of discrimination. In such cases, courts apply the *McDonnell Douglas* burden-shifting framework." *Thomas v.*

10

*Johnson*, 788 F.3d 177, 179 (5th Cir. 2015) (internal citation omitted). Under this framework:

> the plaintiff must first demonstrate a *prima facie* case, and then the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action. If it does that, the presumption of discrimination disappears. The plaintiff, who always has the ultimate burden, must then produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination.

*Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (internal quotation marks and citations omitted).

### 1. Prima facie case

Generally, "[t]o establish a prima facie case, a plaintiff must demonstrate that he, (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Willis v. Cleo Corp.*, 749 F.3d 314, 320 (5th Cir. 2014) (internal quotation marks omitted).

There is no question that Wong was a member of a protected group, that she was qualified for her director position, or that she was discharged from such position. Rather, the parties dispute whether Wong can satisfy the fourth element of her prima facie case. In this regard, Wong argues only that she was replaced by someone of a different race because her duties were distributed between two African Americans – Baker and Green. Doc. #34 at 13.

Fifth Circuit case law on the redistribution of duties is somewhat muddled. In published decisions, the Fifth Circuit has held that a plaintiff establishing a prima facie case of discrimination may demonstrate he was replaced by showing that his duties were assumed by a co-worker outside his protected class. *See LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 449 (5th Cir. 1996) (in wrongful demotion case, plaintiff satisfied prima facie case when his "responsibilities … were

assumed by … a white male).[6]  The Fifth Circuit has also held that a plaintiff is not replaced when the bulk of his duties are assumed by an independent contractor with only a "small percentage" of his work assumed by another employee.  *See Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 149–50 (5th Cir. 1995) (ADEA case).[7]  However, in a series of unpublished decisions, the Fifth Circuit has offered somewhat inconsistent opinions on the question at issue here of whether a plaintiff may show replacement by establishing that her duties were subsequently distributed to multiple employees.

In some cases, the Fifth Circuit has held that "an employee has not been replaced when his former duties are distributed among other co-workers."  *Griffin v. Kennard Indep. Sch. Dist.*, 567 F. App'x 293, 294–95 (5th Cir. 2014) (quotation marks and alteration omitted) (citing *Rexes v. Goodyear Tire & Rubber Co.*, 401 F. App'x 866, 868 (5th Cir. 2010), and *Dulin v. Dover Elevator Co.*, 139 F.3d 898, 1998 WL 127729, at *3 (5th Cir. Mar. 2, 1998) (table decision)).  Other Fifth Circuit decisions have reached the opposite conclusion.  *See Young v. Harris Health Care, Inc.*, 226 F.3d 643, 2000 WL 1029180, at *3 (5th Cir. July 14, 2000) (table decision) (rejecting contention that plaintiff "was not replaced because her job was eliminated and the duties were divided into three new positions"); *McLaughlin v. W & T Offshore, Inc.*, 78 F. App'x 334, 338 (5th Cir. 2003) ("[A]lthough McLaughlin was not replaced by a single person, her duties were delegated to two employees who were not pregnant. McLaughlin established a prima facie case of pregnancy discrimination [under Title VII]."); *Conner v. Hoechst Celanese Chem., Inc.*, 211 F.

---

[6] *See also Howard v. United Parcel Serv., Inc.*, 447 F. App'x 626, 629 n.2 (5th Cir. 2011) (plaintiff established prima facie case when he showed "that only [his] specific position was eliminated and his duties were assumed by someone outside the protected class ....").

[7] *See also Gates v. Forrest Gen. Hosp.*, 196 F.3d 1258, 1999 WL 800319, at *1 (5th Cir. Sep. 24, 1999) (table decision) ("Because only a small part of her duties as Education Coordinator were assigned to another employee already performing other duties as Therapy Coordinator, appellant cannot be considered as having been replaced by another employee.").

App'x 257, 259–60 (5th Cir. 2006) (prima facie case met where duties distributed among three positions).

"Although unpublished opinions are not precedential, they are persuasive." *United States v. Olivares*, 833 F.3d 450, 453 n.1 (5th Cir. 2016). The weight afforded to such decisions necessarily depends on the strength of the reasoning underlying the decision. *See United States v. Morales-Mota*, 704 F.3d 410, 412 (5th Cir. 2013). Thus, the Court will consider the strength of the reasoning underlying the Fifth Circuit's conflicting decisions.

Beyond a general citation to a case for the proposition that a prima facie case requires only a "minimal showing," *Young* cites no authority in support of its conclusion that reassignment of duties to multiple employees satisfies the prima facie replacement requirement. 2000 WL 1029180, at *3. *McLaughlin* cites no authority in support of its conclusion. 78 F. App'x at 338. In contrast, *Dulin*, the case relied on by both *Griffin* and *Rexes*, cites authority from the First and Sixth Circuits for the proposition that "applicable case law holds that when an employee's position has been eliminated and the job duties reassigned to existing employees, that employee has not been replaced." 1998 WL 127729, at *3 (citing *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 423 (1st Cir. 1996), and *Barnes v. GenCorp., Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)). The Fifth Circuit then held that because "the basic reasoning of the First and Sixth Circuits" was used in *Armendariz*, a plaintiff could not show he was replaced when his position was eliminated and the duties were reassigned to two co-workers. *Id*.

While the First Circuit case cited by *Dulin* related to pretext, not a prima facie case, this Court finds *Dulin*'s reasoning largely persuasive and concludes that, under Fifth Circuit law, a plaintiff is not replaced when his duties are "reassigned to existing employees." Accordingly, the question becomes when duties are considered "reassigned to existing employees." In answering

13

this question, the Court turns to the Sixth Circuit jurisprudence on which *Dulin* relied.

In *Barnes*, the Sixth Circuit case relied on by *Dulin*, the court held that a "person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or *reassigned* to perform the plaintiff's duties." 896 F.2d at 1465 (emphases added). Put differently, duties are not reassigned to existing employees when a defendant hires or reassigns people to perform the duties at issue. Rather, in such situations, the terminated employee is deemed replaced. *See Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir. 1986) (prima facie case satisfied when co-worker was promoted to assume plaintiff's duties).

In this case, Lighthouse reassigned Wong's duties not to existing employees but to two vacant positions (one of which was created as a result of Wong's termination), and then reassigned two employees outside Wong's protected class – Baker (African American) and Lagoberto (Hispanic) – to these vacant positions. Both of these reassignments (Baker from a front desk clerk to a hotel supervisor, and Lagoberto from a casino food and beverage director to management of operations of the hotel) carried substantial changes in the nature and scope of responsibilities. Under these circumstances, the Court concludes that Baker and Lagoberto were reassigned to perform Wong's duties and that, therefore, Wong can satisfy the fourth and final element of her prima facie case. *See generally Trapani v. 19 Mile Senior Hous., LLC*, No. 16-12714, 2017 WL 3720458, at *4 (E.D. Mich. Aug. 29, 2017) (plaintiff made established prima facie case where two employees were promoted to assume duties).

### 2. Legitimate nondiscriminatory reason

"In the second step of the *McDonnell Douglass* framework, the *employer* must produce

evidence of a legitimate, nondiscriminatory reason for the adverse employment action, apart from the inferred discriminatory reason." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 236 (5th Cir. 2016). This "burden is one of production, not persuasion … as to [the] legitimate, nondiscriminatory reason. In satisfying this burden, [the defendant] must clearly set forth, through the introduction of admissible evidence, the reasons for the adverse employment action." *Id.* (internal footnote, alterations, and quotation marks omitted).

Lighthouse argues that Wong was terminated due to "the elimination of the stand-alone Hotel Director position" done as a part of a corporate restructuring. Doc. #31 at 11. As support for this contention, Lighthouse points to Green's testimony that he decided to terminate the Hotel Director position in order to save money.

The elimination of a position is a legitimate nondiscriminatory reason for an employee's termination. *See Leal v. BFT, Ltd. P'ship*, 423 F. App'x 476, 480 (5th Cir. 2011) (second-step burden satisfied where defendant "stated that it eliminated the [plaintiff's] position because [CEO] believed that it was neither necessary nor beneficial to the company's goal of increased sales"). Accordingly, the Court concludes that Lighthouse has shown a legitimate, nondiscriminatory reason for Wong's termination.

### 3. Pretext

"[I]f the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative)." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (quotation marks and alterations omitted). Practically, "the employee

15

must produce or rely on evidence that the employer's legitimate, nondiscriminatory reason was only a *pretext*—that is, a false or weak reason advanced to hide the actual reason." *Heinsohn*, 832 F.3d at 236–37 (quotation marks and alterations omitted).

As evidence of pretext, Wong argues that (1) she was hired twice by white individuals and "fired twice by black individuals, Goode and Green;" (2) Goode "disliked non-black employees and treated Wong differently than the black employees;" (3) Wong received a good evaluation a few months before the elimination of her position; (4) Green told Wong that "corporate" was terminating her position but then "contradicted" himself when he later testified that it was his decision; (5) Green could not recall how much money was saved from the elimination of Wong's termination; (6) Wong and Spencer, the two employees terminated as a part of the reorganization, were each "non-black;" (7) "Wong knew she was let go because of her race, because she was qualified and was making money at the hotel;" (8) despite being qualified, Wong was never considered for the F&B/Hotel Director position at the time of its creation; (9) Wong was never considered for the Hotel Supervisor position; (10) Wong was not selected by Green for an interview when she applied for the F&B/Hotel Director position in May 2016; and (11) there is no evidence that Grant, the eventual F&B/Hotel Director ever applied for this position.

In arguing pretext, Wong makes absolutely no attempt to tie the specific articulated facts to the legal standard of pretext. Indeed, beyond the general standards, Wong cites no case and makes no effort to apply the relevant law to the facts of record. Instead, Wong simply lists the items above with the apparent goal of having the Court perform legal analysis for her.

"It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Vargas-Colon v. Fundacion Damas, Inc.*, 864 F.3d 14, 24 (1st Cir. 2017). Thus, "[c]ourts have

16

consistently held that inadequate briefing results in a waiver of a party's argument." *TGIP, Inc. v. AT&T Corp.*, 512 F.Supp.2d 696, 712 (E.D. Tex. 2007). For Wong's failure to do more than state the items listed, the Court deems Wong's pretext arguments waived.

Even if Wong's arguments were not waived, the Court would find no genuine issue of material fact on the issue of pretext. First, the Court gives no credence to Wong's apparent argument that because she was twice terminated by African American individuals, her termination here was based on race. *See Green v. Corr. Corp. of Am.*, 401 F. App'x 371, 376 (10th Cir. 2010) ("Mere differences in race do not, by themselves, support an inference of racial animus.").

Second, Wong has offered no evidence that Goode was biased against "non-black" people. The evidence of record states that Wong heard that Goode was biased against white people specifically, not "non-black people" generally. Even if Goode actually harbored such animus, her beliefs cannot show pretext because there is no evidence she was a decisionmaker or influenced a decisionmaker. *See Rios v. Rossotti*, 252 F.3d 375, 382 (5th Cir. 2001) ("Typically, statements by non decision makers or statements by decision makers unrelated to the decisional process itself do not suffice to satisfy the Plaintiff's burden." (quotation marks and alterations omitted)).

Third, because Wong's performance was not offered as a ground for her termination, her earlier evaluation has no bearing on the pretext inquiry. *See, e.g., Perkins v. Promoworks, L.L.C.*, No. H-11-442, 2012 WL 6530137, at *12 n.81 (S.D. Tex. Nov. 26, 2012) ("Plaintiff's argument that she was not a poor performer is irrelevant to the issue of pretext because Defendant did not offer poor performance as a basis for terminating Plaintiff."); *see also Kaster v. Safeco Ins. Co. of Am.*, 212 F.Supp.2d 1264, 1275 (D. Kan. 2002), *aff'd*, 82 F. App'x 28 (10th Cir. 2003) ("Even assuming there was evidence in the record that defendant 'refused' to consider plaintiff's good performance, such evidence would be irrelevant to the pretext analysis as defendant does not

contend that plaintiff's lack of 'good performance' kept him from obtaining any of the three specific jobs at issue.").

Fourth, while inconsistent reasons for a decision may be evidence of pretext in some circumstances,[8] Green's alleged statement to Wong that it was "corporate … terminating" the position is not inconsistent with his later testimony that he made the decision to terminate the position after consultation with the corporate office. Even if the statement was inconsistent, the inconsistency did not relate to the reason for Wong's termination but rather the process behind the reason. Accordingly, Green's statement regarding "corporate" is not evidence of pretext.

Fifth, because an "inability to recall [specific details] is not evidence of discrimination, [but] rather … the natural consequence of being asked about an unremarkable moment years after the fact," *Torres v. McHugh*, 701 F.Supp.2d 1215, 1225 (D.N.M. 2010); Green's inability to recall how much money was saved from the restructuring is not evidence of pretext.

Sixth, while statistical evidence may be used to show pretext, the probative value of such evidence "depends on all the surrounding facts, circumstances, and other evidence of discrimination." *E.E.O.C. v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1185 (5th Cir. 1996). A "statistic that [a reduction in force] resulted in termination of the only two minorities on [a] team, without more, does not permit a reasonable inference that race was a motivating factor in [a] termination." *Quintana v. Fuijifilm N. Am. Corp.*, 96 F.Supp.3d 601, 616-17 (N.D. Tex. 2015). Here, Wong has offered absolutely no context which would allow the Court to infer that the termination of Spencer (a woman of a different race) is evidence of pretext.

Seventh, Wong's belief that she was discriminated against because she was qualified and

---

[8] *See Nasti*, 492 F.3d at 594 ("A court may infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct.").

18

making money cannot establish pretext. Subjective opinions of discrimination do not satisfy the pretext standard. *See Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997) ("To establish pretext, a plaintiff cannot merely rely on his subjective belief that discrimination has occurred."). Additionally, that Wong was making the hotel some amount of money does not undermine the proffered reason that elimination of her position would save the defendant money.

Wong's remaining evidence of pretext relates to either decisions regarding positions she did not apply for (the hire of Baker to Hotel Supervisor and the hire of Lagoberto to Director of F&B/Hotel Operations), her failure to hire or failure to promote claims which are not before the Court, or to a hiring decision made by a decisionmaker who was not even employed by Lighthouse at the time of her relevant termination. None of this evidence can establish pretext.

In sum, none of Wong's proffered evidence of pretext creates a genuine issue of material fact that the elimination of her position was not the real reason for her termination, or that the elimination was only one reason for the termination and that Wong's race was another motivating factor. Accordingly, the motion for summary judgment will be granted.

### C. Motion for Partial Summary Judgment

Lighthouse's motion for partial summary judgment seeks dismissal of Wong's claims for punitive damages and mental anguish. *See* Doc. #32. Because this Court has determined that Wong's underlying claims will be dismissed, this motion will be denied as moot.

### IV
### Conclusion

For the reasons above, Lighthouse's motion for summary judgment [30] is **GRANTED**. Lighthouse's motion for partial summary judgment [32] is **DENIED as moot**. A final judgment will issue separately.

19

**SO ORDERED**, this 5th day of December, 2017.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**